The bill is filed by complainants, as the heirs-at-law and next of kin of Ferdinand Woodward, deceased, who was the brother of Emily Schanck, deceased, and a beneficiary named in her will. They seek a decree that they are entitled to a legacy of $3,000 under the said will, charged on real estate devised to defendants, and for the sale of the said real estate to satisfy the legacy so claimed to be due to them.
In and by the will of the said decedent Emily Schanck, the remainder interest in the farm premises owned by testatrix, from and after the death of the survivor of the son and daughter of the said testatrix (Charles W. Schanck and Emily W. Schanck, respectively), was given, one-half to the lawful *Page 120 
issue of the said son and one-half to the issue of the said daughter, with the further provision that if the said daughter should die without leaving lawful issue her surviving, the entire farm (subject to a legacy charged thereon as hereinafter mentioned) should go to the issue of the son Charles W., share and share alike.
That contingency happened. The daughter, Emily W., survived testatrix and died without issue in 1890; the son, Charles W., died June 20th, 1932, leaving him surviving a son, DeLafayette Schanck, and a daughter, Emily Schanck (the present defendants). At the last mentioned date, therefore, the two defendants became seized as tenants in common of the said farm subject to the legacy charged thereon as aforesaid.
The legacy so charged is a legacy of $3,000, given by the will of testatrix (on the contingency that the daughter Emily W. should die without issue), to Ferdinand Woodward, brother of the testatrix, "or in case of his death in the lifetime of my said daughter, then to his lawful issue" share and share alike. Ferdinand Woodward did not die in the lifetime of the daughter; he died some six years after her death, to wit, in 1896.
It is contended by the defendants (1) that the legacy so charged was not a vested but a contingent legacy — which is true; and (2) that it lapsed by reason of the death of the legatee before the arrival of the time for payment. With this latter contention we are unable to agree.
Whether a legacy charged upon land will lapse by the death of the legatee before the time fixed for payment depends solely on whether the legacy became vested in the legatee by the time of his death. 82 A.L.R. 680. Where the real estate is devised to one for life, and after his death is charged with the legacy, the payment of the legacy is considered as postponed not from circumstances personal to the legatee, but only for the convenience of the estate, and on the death of the legatee during the life estate, his interest will pass to his personal representatives. 2 Williams, Executors, 1253; see, also,Garland v. Smiley, 51 N.J. Eq. 198. *Page 121 
In the instant case the legacy did not vest at the death of testatrix. The postponement of vesting was not merely for the convenience of the estate; the testatrix expressed the intent that the right of the legatee to the legacy should arise only on the contingency that the life tenant (Emily W.) should die without leaving issue her surviving. Upon the happening of that contingency, however, it is clear under the terms of the will that the right to the legacy then took effect — in Ferdinand, if then still living, or in his issue, if he had theretofore deceased.
The specified contingency did occur. Emily W. died without issue. Ferdinand was then still living. He, therefore, and not his issue, became entitled to the legacy — the interest became then vested in him, although the legacy did not become then immediately due and payable. The time of payment remained contingent, because although no express words in that behalf appear in the will, it is clear from the will as a whole that the legacy was not intended to become payable until the death of the survivor of the two children of testatrix.
The legacy remained further contingent in this sense: that if at the death of the survivor of the two children of testatrix, such survivor (Charles) also left no issue him surviving, then the legatee Ferdinand became entitled to the whole of a one-half share in the farm instead of the legacy charged thereon. Strictly speaking, he became vested on the death of Emily W. with the legacy charged on the land, payable at the death of Charles, subject to the contingent enlargement of that gift to the entire half interest in the land itself, if Charles should die without issue surviving.
The vested interest of Ferdinand passed on his death to his successors in interest. It never became enlarged because Charles left issue surviving. The legacy became due and payable, on the death of Charles, June 20th, 1932, to the persons who legally succeeded to the interest of Ferdinand. It was personal property — a money legacy secured by a charge on lands; similar to a debt secured by mortgage. On the death of Ferdinand, the right thereto passed to Ferdinand's executrix, inasmuch as he died testate, leaving a will thereafter *Page 122 
duly probated in 1896. His widow, Annie, was the executrix named therein, and the will gave everything to her in trust for the benefit of herself and three children — all of whom survived Ferdinand.
The proofs show that the estate of Ferdinand was fully administered by his executrix, and that by a decree of distribution entered in 1898, the residue of the estate went to her (the widow) for life, and at her death to the three children, Florence, Ellen and Charles; and that the executrix was discharged.
The widow died in 1917. Of the three children, Charles and Ellen are still living and are two of the present complainants. (Ellen was married to one Hunter at the death of her father. She subsequently became a widow and later married one William Grant Cooper. Defendants raise objection based on the fact that the marriage record offered in evidence is in the name of "Nellie E. Hunter," instead of Ellen E. Hunter. The objection is without weight: "Nellie" is a well known nickname or substitute for "Ellen").
The third child, Florence (Bacon), subsequently became the wife of Jay Scott, and died in California in 1907, leaving a will duly probated whereby she gave her residuary estate to her husband. Her estate was duly administered and decree of distribution duly entered in favor of Jay Scott. Jay Scott remarried and died in 1921, leaving a will duly probated, whereby he gave his estate, one-fourth to his widow, Lillian H. Scott, one-fourth to each of his sons, Oliver C. and Philip B., and one-eighth each to his grandsons, Jay Scott Clare and Robert Burch Clare. His estate was duly administered and decree of distribution duly entered in 1925 in favor of the beneficiaries as above set forth. All of them are parties complainant herein except Oliver C. Scott, who died in 1926 leaving a will duly probated whereby he gave all his estate to his widow, Mary Ella Scott. His estate was duly administered and decree of distribution duly entered in 1927 in favor of Mary Ella Scott — who is also one of the complainants herein. *Page 123 
The rights of the present complainants to the legacy, as successors in interest to Ferdinand, are therefore adequately established. Charles Woodward and Ellen Cooper are each entitled to one-third thereof; Lillian H. Scott, Philip B. Scott and Mary Ella Scott are each entitled to one-twelfth; and Jay Scott Clare and Robert Burch Clare are each entitled to one twenty-fourth.
One other question remains. Complainants contend the legacy is charged on the entire farm; defendants contend it is charged only on an undivided one-half part of the farm. The latter view is the correct one. Subject to the estate for life to the son and daughter of testatrix, the will gives one undivided half part of the farm to the issue of the son and the other half to the issue of the daughter. If the daughter leave no issue, the legacy of $3,000 to Ferdinand is charged on the "farm" and the "remainder" of the farm is given to the issue of the son. It seems clear that in this latter the testatrix was dealing solely with the half share given primarily to the issue of the daughter. One-half share had been disposed of by the gift to the issue of the son. The other was given to the issue of the daughter, but if the daughter left no issue, testatrix provided for other disposition of that share, by giving it also to the issue of the son, but charged with the payment of $3,000 to the brother of testatrix.
Complainants are entitled to decree that there is due to them the principal sum of the legacy of $3,000, with interest from June 20th, 1932, and for the sale of an undivided one-half part of the farm to satisfy the same, unless payment thereof be made by defendants within a reasonable time to be fixed in the decree.
It follows that the counter-claim of defendants, seeking a decree establishing that neither the farm nor any part thereof is subject to any lien or charge of the legacy in question, must be dismissed. *Page 124